## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH DAKOTA
## WESTERN DIVISION

|  |  |
|---|---|
| BH SERVICES INC.,<br>For itself as Sponsor and Fiduciary<br>and for the BH SERVICES, INC.<br>HEALTH AND WELFARE PLAN,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>FCE BENEFIT ADMINISTRATORS<br>INC., TRUST MANAGEMENT<br>SERVICES, ACEC MW AND<br>TRANSAMERICA LIFE INSURANCE<br>COMPANY<br><br>　　　　　Defendants. | **Case No. 16-5045-JLV**<br><br>**PLAINTIFFS' FIRST AMENDED<br>COMPLAINT** |

COME NOW Plaintiffs, BH SERVICES, INC. ("BH Services") and BH SERVICES, INC. HEALTH AND WELFARE PLAN ("PLAN") (together "PLAINTIFFS"), complaining of FCE BENEFIT ADMINISTRATORS, INC. ("FCE"), TRUST MANAGEMENT SERVICES ("TMS"), ACEC MW and TRANSAMERICA LIFE INSURANCE COMPANY and ("Transamerica") and hereby files its First Amended Complaint pursuant to Rule 15(a)(1)(B) and for cause of action would show the Court as follows:

## I.
## NATURE OF CLAIMS

1.01   This lawsuit concerns federal (ERISA) and state law claims for breach of contract, fraud, conversion of PLAN assets and breach of fiduciary duty by FCE, TMS, ACEC, and Transamerica in connection with the wrongful design and administration of the PLAN, the

prohibited  handling of trust assets and dissipation of trust assets for the PLAN, excessive and undisclosed fees and charges, and other breaches, including misrepresenting the nature of the plan to prevent BH SERVICES from discovering what happened to its PLAN assets. This lawsuit contains claims for an affirmative injunction against dissipation of PLAN assets and for an accounting of PLAN assets under ERISA § 502(a)(3).

1.02    FCE was, by contract, entirely responsible for the compliance aspects of the PLAN.  However, unknown to BH SERVICES, FCE was entirely empowered to deal with the assets of the PLAN and exercised control over the assets of the PLAN.  To assist it in securing control over these assets, FCE retained purported "independent" trustees to serve as the trustees of the PLAN, however, FCE controlled these trustees.  Prior to 2013, this was Marilyn Ward and Vivian Lewis.  After 2013, this was Defendant TMS.  FCE, rather than these trustees, directed all transactions involving PLAN assets.

1.03    BH SERVICES believed it sponsored group <u>term</u> life insurance benefits for its employee/participants of the PLAN.  However, this was simply a ruse to get BH SERVICES to pay extra fees and charges.  There were no group term life insurance policies.  While attempting to reconcile financial documents provided to it by FCE agents, BH SERVICES discovered that its participants had cash accounts in at least two master group variable universal life insurance policies issued by Transamerica Life Insurance Company ("Transamerica").  These policies were not owned by the trustee, TMS.  Rather the policies (and their cash values) were owned by FCE and a company called ACEC.  ACEC was another multiple employer welfare benefit plan or "MEWA" controlled by FCE or its agents.

1.04    ACEC and FCE has control over these PLAN assets held in the Transamerica permanent policies, and further has control of all the cash assets in these policies, which are

properly owned by the PLAN.  Accordingly, ACEC and FCE could freely access the built up cash accounts that had accumulated in these insurance policies.  Because FCE, ACEC and the trustees hid this cash surrender value from BH SERVICES, no one would know about their access to this cash surplus.

1.05    However, BH SERVICES changed administrators and trustee of the PLAN and directed FCE and TMS to transfer PLAN assets to a new plan trust account that would be administered by an organization called Fringe Benefits Group.  In this process, it discovered these group permanent life insurance policies.  BH SERVICES requested information from Transamerica concerning the cash accounts held for its employee/participants in the group permanent life insurance policies.  Transamerica responded to the request by providing a spreadsheet showing the participant accounts of BH SERVICES, which were comingled with 50 other employers with employees who have cash siting in the same group variable universal life insurance policies.

1.06     Defendants refused to transfer all of the PLAN assets, money and benefits to the new plan.  Defendants have failed to account for all of the PLAN assets, including but not limited to all the cash assets held in the group permanent life insurance policies issued to FCE and ACEC and insuring the lives of current and former BH SERVICES employees.  FCE and TMS have also refused to provide information regarding the PLAN's healthcare reimbursement accounts.  As of the filing of this lawsuit, there are believed to be more than $1 million in PLAN assets that have not been transferred or have been stolen by Defendants.

1.07    In October 2016, BH SERVICES received an adverse independent auditor's report with respect to the PLAN from Ketel Thorstenson, LLP.  The adverse opinion was issued due to FCE's and TMS' refusal to provide sufficient support and documentation concerning

PLAN asset transactions, the amount of the cash values in the variable universal life insurance policies held for BH SERIVCES employee/participants, and the refusal to account for the source of funds or benefits paid from the health reimbursement account in the PLAN.  BH SERVICES now believes the health reimbursement accounts may have never existed, and these amounts were used to build up the cash reserves in the group permanent life insurance policies, which FCE and/or ACEC used as a source of cash.  Defendant Transamerica, through the fraud of its agents, allowed these insurance policies, which are PLAN assets, to be withheld from control of the PLAN and dissipated by excessive fees and charges.

## II.
## PARTIES

2.01    Plaintiff, BH SERVICES, INC., is a South Dakota not-for-profit corporation based in Rapid City, South Dakota, with its principal place of business located at 3650 Range Road, Rapid City, SD  57702.  BH SERVICES, INC. is the Sponsor, Administrator and Named Fiduciary of the PLAN.

2.02    Plaintiff, BH SERVICES, INC. HEALTH AND WELFARE PLAN, is an employee welfare benefit plan as defined by ERISA § 3(1),  that included, during the time of the events complained of in this Complaint, a self-funded group health plan, and now includes a health reimbursement account.  The PLAN is funded via the general assets of BH SERVICES, which are placed in a trust account as needed to fund PLAN claims and expenses.  The PLAN has capacity to sue Defendants under ERISA § 502(d)(1).

2.03    Defendant, FCE BENEFIT ADMINISTRATORS, INC., is a for-profit corporation and is a citizen of California, with its principal office located at 887 Mitten Road, Burlingame, CA 94010.  Defendant, FCE is the third-party administrator for the PLAN, the plan document provider, and a limited scope fiduciary of the PLAN.  FCE is a co-fiduciary with

TMS.  Defendant, FCE BENEFIT ADMINISTRATORS, INC., has made an appearance in this lawsuit. At all relevant times, Defendant FCE was the third party administrator of the Plan.  As the Plan's third party administrator, FCE exercised discretionary control or discretionary authority over claims processing, payment of claims, recordkeeping, coverage administration, and negotiating the Plan's contracts with service providers and/or insurers, and exercised authority or control over Plan assets.  At all relevant times, FCE was a Plan fiduciary within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A), because it exercised discretionary authority and/or discretionary control respecting management of the Plan and/or exercised any authority or control respecting management or disposition of its assets, and had discretionary authority and/or discretionary responsibility in the administration of the Plan.

2.04    Defendant, TRUST MANAGEMENT SERVICES, is a for-profit corporation, is a citizen of California, and has its principal office located at 831 Mitten Road, Burlingame, CA 94010.  Defendant TMS is a fiduciary of the PLAN and a co-fiduciary of FCE.  Defendant, TRUST MANAGEMENT SERVICES, may be served by serving its President, Derrick Quan, as follows:

TRUST MANAGEMENT SERVICES
c/o Derrick Quan, President
831 Mitten Road, Suite 215
Burlingame, CA 94010

At all relevant times, Defendant TMS was a Plan fiduciary within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A), because it exercised discretionary authority and/or discretionary control respecting management of the Plan and/or exercised any authority or control respecting management or disposition of its assets, and had discretionary authority and/or discretionary responsibility in the administration of the Plan.

2.05    Defendant, ACEC MW, is believed to be a California company, with its principal

office located at 887 Mitten Road, Burlingame, CA 94010.  Defendant ACEC is a limited scope fiduciary of the PLAN.  ACEC MW is a co-fiduciary with TMS and FCE.  Defendant ACEC MW, is believed to be a company run by and controlled by FCE based in part upon the transfers of money between ACEC MW and other close relationships.  It may be served with process by serving the owners of FCE:

Steve Porter or Gary Beckman<br>
887 Mitten Road<br>
Burlingame, CA 94010

At all relevant times, Defendant ACEC was a Plan fiduciary within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A), because it exercised discretionary authority and/or discretionary control respecting management or disposition of its assets.

2.06    Defendant, Transamerica Life Insurance Company, is an Iowa insurance company.  Defendant, Transamerica Life Insurance Company, may be served with process by serving its registered agent as follows:

Transamerica Life Insurance Company<br>
c/o Jill Handley<br>
4333 Edgewood Road NE MS 2520<br>
Cedar Rapids, IA  52499

### III.
### VENUE AND JURISDICTION

3.01    Venue of this action is proper under ERISA § 502(e)(2)(29 U.S.C.§ 1132(e)), in the Western Division (Rapid City) of the United States District Court for the District of South Dakota, because the PLAN is administered in the Western Division, all or a substantial part of the events or omissions that give rise to this claim occurred in the Western Division, and the breaches at issue occurred in the Western District of South Dakota.  Venue is plainly allowed for

in the Western District in accordance with ERISA's venue provisions.

3.02    This Court has personal jurisdiction over FCE, TMS, ACEC and Transamerica because they have done and do business in Rapid City, South Dakota, and this suit arises out of that business done in Rapid City, South Dakota.  FCE and TMS have contracted with BH SERVICES and/or provided services to the PLAN.  Transamerica has issued insurance policies for the PLAN covering employees in the PLAN.  ACEC owns such policies and has exercised control over PLAN assets.  All have the requisite minimum contacts with South Dakota due to their contacts with BH SERVICES and the PLAN related to this litigation.

3.03    This Court has exclusive subject matter jurisdiction over the ERISA claims presented by Plaintiffs under ERISA § 502(e)(1).

## IV.
## CONDITIONS PRECEDENT

4.01    All conditions precedent to recovery by the PLAINTIFFS herein have been performed, have occurred, or have been excused.

## V.
## FACTS OF CASE

5.01    The PLAN is a health and welfare plan for the benefit of its employees.  As early as 1995, BH SERVICES, in its capacity as PLAN Sponsor and PLAN Administrator retained FCE to provide a plan document, compliance services and third-party administrative services for the PLAN.  Prior to 2013, FCE hired Marilyn Ward and Vivian Lewis to act as plan trustees.  Upon their alleged retirement in 2013, FCE hired TMS to serve as the trustee of the assets in the PLAN.  After receiving conflicting information from FCE concerning the impact of the Affordable Care Act on the PLAN, BH SERVICES started looking for other available plan providers and administrators.  In 2015, BH SERVICES chose to transfer plan document,

compliance and administration and servicing of the Plan to Fringe Benefits Group.  On October 28, 2015, BH SERVICES provided written notification to Defendants of its intent to terminate their services in sixty days.  On December 15, 2015, BH SERVICES provided written notice to TMS and FCE directing them to transfer all of the assets in the PLAN to the new plan administered by Fringe Benefits Group effective December 31, 2015.

5.02    Despite multiple requests in writing, via telephone and in person to obtain the transfer of the PLAN assets from FCE and TMS, FCE and TMS refused to transfer the assets of the PLAN to Fringe Benefits Group.  BH SERVICES had been provided with an accounting that showed $734,953.23 of Plan assets.  However, as of the filing of this lawsuit, FCE and TMS had not transferred these assets.  BH SERVICES believed most of these assets were liquid assets such as bank accounts, and the transfer of which could occur in less than 24 hours.  FCE and TMS gave BH SERVICES gave no legitimate reason for their failure to transfer the assets of the PLAN.

5.03    In seeking to determine what happened to the PLAN assets, BH SERVICES learned that FCE and TMS made misrepresentations to them and concealed relevant information from them in effort to cover up the fact that they have either lost or stolen the money belonging to the PLAN.  In particular, prior to TMS becoming the trustee of the Plan, FCE had appointed Marilyn Ward as the trustee.  FCE represented that Marilyn Ward was supposedly independent of FCE, but in reality she was not independent.  In addition, FCE represented to BH SERVICES that Marilyn Ward simply retired from business and that this was the reason for the need to appoint a new trustee.  In reality though, BH SERVICES learned that Marilyn Ward was under investigation for embezzling significant assets under her control as trustee.  Moreover, FCE has recently learned that during Marilyn Ward's tenure as Plan trustee, Ward was rebating money

back to FCE and its owners.  Specifically, Ward paid FCE or its owners the following payments: (1) 10.9% of total trustee fees received by Ward for "Business Development and Retention Costs;" (2) payments for "trustee assistants" who were employed by FCE, received W-2s from FCE, and worked in FCE's offices, for performing work, including but not limited to plan work; (3) an additional 10% Management Fee of the total of all trustee assistant costs, as well as $250/month in "overhead" fees; and (4) rent payments for use of property owned by FCE's owners.  None of this information was revealed to BH SERVICES at the time of transfer of trust services to TMS.  In addition, BH SERVICES learned that the current trustee, TMS, was not a truly independent trustee as it had some undisclosed relationship with FCE.  Accordingly, neither trustee disclosed the truth about the PLAN assets, and BH SERVICES and the PLAN did not discover the loss and dissipation of PLAN assets until FCE and TMS refused to transfer the PLAN assets.

      5.04    Additionally, BH SERVICES was asked to use an accounting/auditing firm, Ineich & Company,  which FCE and TMS claimed was independent.   In mid-2016, BH SERVICES discovered that Ineich & Company, was not independent from an auditing/accounting perspective, but was the auditor and accountant for FCE, the FCE Health and Welfare Plan, ACEC, and the ACEC Health and Welfare Plan.  Further Ineich & Company was merely reconciling its own work product, and relied upon un-supported financial information provided by FCE, TMS and ACEC when producing financial reports for BH Services' independent auditor's reports.  It also failed to verify that PLAN assets, in fact, existed as represented.   In sum, the PLAN's financial records were never truly independently reviewed.

      5.05    At all relevant times, BH SERVICES was told by FCE and its owners Gary Beckman and Stephen Porter, including in plan documents, that contributions made to the PLAN

would be for the benefit of the PLAN and its plan participants and that charges against the PLAN would be ordinary and reasonable.   BH SERVICES believed it sponsored group term life insurance benefits for its employee/participants of the PLAN and received documents describing such term insurance.  However, while attempting to reconcile financial documents provided to it by FCE agents, BH SERVICES discovered that its PLAN participants actually had cash accounts in at least two master group variable universal life insurance policies issued by Transamerica. These PLAN assets were held by ACEC and FCE, not TMS, based on the fraud of Transamerica's agents, who also happened to be the owners of FCE.

5.06    In mid-2016, BH SERVICES requested information from Transamerica concerning the cash accounts held for its employee/participants in the group permanent life insurance policies.  Transamerica responded to the request by providing a spreadsheet showing the participant accounts of BH SERVICES, along with 50 other employers with employees who have cash siting in the same group variable universal life insurance policies owned by FCE or a related entity.   BH SERVICES was surprised to discover the insurance policies were actually owned by FCE and another multiple employer welfare benefit plan or "MEWA" controlled by FCE called "ACEC."   The PLAN assets were co-mingled with these other 50 employers in violation of the PLAN document.

5.07    Accordingly, these policies were not owned by the trustee, TMS, for the benefit of the Plan participants.  Rather the insurance policies (and their cash values) were owned by the plan administrator FCE and its company ACEC.  Significant PLAN assets were held in the group permanent life insurance policies owned by FCE and ACEC and they had control of all the cash assets in these polices.  Accordingly, these companies could freely access the built up cash accounts that had accumulated in these insurance policies.  Moreover, because FCE, TMS and

ACEC hid the existence of these group permanent life insurance policies from BH SERVICES, no one would know about their access to this cash surplus.  FCE and ACEC exercised control over this cash surplus by either charging excessive fees to the PLAN or by simply taking the cash surplus.

      5.08    It is clear that FCE was exercising discretionary control or discretionary authority over not only claims processing, payment of claims, recordkeeping, coverage administration and negotiating plan contracts, but also exercising control and authority over PLAN assets, including outright ownership of the PLAN assets.  Indeed, in 2016 when BH SERVICES was trying to secure PLAN assets they were told by TMS that FCE controlled such PLAN assets.   FCE and ACEC have also exercised control and authority over the management of PLAN assets, as evidenced by their ownership of those assets.  FCE and ACEC have also exercised discretionary authority and responsibility in the administration of the PLAN, as evidenced by their decision to own these PLAN assets.  The authority or control FCE and ACEC exercised was not ministerial in nature.   As such, FCE and ACEC are clearly fiduciaries under ERISA.  These acts were done in violation of the Trust Agreement, which required TMS to receive and hold PLAN assets.  FCE and ACEC, with the knowledge and consent of TMS, violated this provision of the Trust Agreement and exercised control and authority over these assets.  TMS agreed to allow FCE and ACEC this control and authority over PLAN assets, knowingly participating in this decision. ACEC, TMS and FCE failed to comply with their own duties, including fiduciary duties, in allowing FCE and ACEC to exercise control over these assets and not return them to the PLAN, and FCE, ACEC and TMS failed to take any reasonable efforts to remedy these problems or return the assets to the PLAN.

      5.09    In October of 2016 BH SERVICES discovered that independent auditor reports of

the 50 other employers participating in the Transamerica group permanent life insurance policies showed that other employers reported, like BH SERVICES once believed, that the employers paid premiums for group <u>term</u> life insurance policies in their health and welfare plans.  However, the documents provided by Transamerica to BH SERVICES demonstrate that all these employers have been paying money into the group variable universal life insurance policies owned by FCE and ACEC.  Thus, BH SERVICES believes, based upon auditor reports filed with the other employers' Form 5500s, that these other employer's employees have cash siting in participant accounts at Transamerica that have not been disclosed to those employers who sponsor the health and welfare benefit plans, just as they have not been disclosed to BH SERVCICES.

5.10     Further, BH SERVICES discovered that certain participant accounts in the BH SERVICES' PLAN disclosed by Transamerica were held, along with life insurance coverage, in a "warehouse" of FCE.  These "warehoused" accounts were for participants who had severed their employment with BH SERVICES.  No accounting of cash values, cash transactions, or life insurance benefit payments have been provided by the policies' owners, FCE and ACEC, for these former employees of BH SERVICES.   It appears that such "warehoused" accounts were never returned to the PLAN, but simply kept by FCE or ACEC.  TMS, despite its duties as trustee, simply allowed this to happen.

5.11     BH SERVICES further discovered that neither FCE nor TMS could account for the source of funds or benefit payments associated with the PLAN's health reimbursement account. It appears FCE used the cash values of the group permanent life insurance purportedly to provide unemployment compensation and health reimbursement account benefits.  However the premiums FCE and TMS charged for these benefits were substantially in excess of the

funding necessary to pay actuarially predicted or actual claims.  There is no accounting to show what TMS, FCE or ACEC did with the excess funds.

5.12    In October 2016, BH SERVICES received an adverse independent auditor's report with respect to the PLAN from Ketel Thorstenson, LLP.  The independent auditor's adverse opinion was issued due to FCE's and TMS' refusal to provide sufficient support and documentation concerning PLAN asset transactions, the amount of the cash values in the variable universal life insurance policies held for BH SERIVCES employee/participants, and the refusal to account for the source of funds or benefits paid from the health reimbursement account in the PLAN.  In essence, FCE and TMS have taken all steps possible to prevent BH SERVICES from receiving not only its assets in the PLAN, but sufficient information about the assets in the PLAN.

5.13    Most recently, BH SERVICES has learned that the United States Secretary of Labor has brought a lawsuit against FCE Benefit Administrators and its owners Gary Beckman and Stephen Porter.  This lawsuit is styled *Thomas E. Perez v. Chimes District of Columbia*, Civil Action No. RDB-12-3315, pending in the United States District Court for the District of Maryland.  Like here, the United States Secretary of Labor has alleged that FCE Defendants (FCE and its owners Beckman and Porter) took control over the plan's assets and therefore was a "plan fiduciary" under ERISA.  Like here, the lawsuit also alleges that FCE overcharged the plan at issue, fraudulently concealed compensation it received, failed to prudently manage the plan and its assets, and failed to properly administer the plan causing plan losses and improper profits to FCE, including but not limited to excessive fees.

5.14    FCE and TMS are actively preventing BH Services from even discovering information about the PLAN assets.  Accordingly, it is clear that an accounting is required as

soon as possible to determine where the PLAN assets are, what its expenses are, what has been charged against the PLAN, and who has profited from the PLAN.  To date, all efforts by BH Services and the independent auditor Ketel Thorstenson to properly perform an accounting have been met with resistance.  BH Services and the PLAN have suffered losses due to the failure to return all the PLAN assets.  It has also been prevented from determining the entire scope of its losses.

## VI.
## FIRST CAUSE OF ACTION: REQUEST FOR INJUNCTION

6.01    The allegations set forth in Sections 1.01 through 5.04 of this Complaint are hereby reasserted and fully incorporated by reference.

6.02    The PLAN is the owner of the assets held in the PLAN trust for the sole and exclusive benefit of the PLAN Participants.  FCE, ACEC and TMS are not permitted to dissipate PLAN assets in violation of their fiduciary duties.  FCE, ACEC and TMS have not been able to account to BH SERVICES for the PLAN assets.  FCE, ACEC and TMS have actual and/or constructive knowledge of fiduciary breaches by each other related to the PLAN assets, as set forth above.

6.03    BH SERVICES, as Fiduciary and PLAN Administrator and the PLAN request an injunction prohibiting FCE, ACEC and TMS from taking any action that will dissipate PLAN assets until an accounting of the PLAN assets may be presented to this Court and approved by this Court.

6.04.    BH SERVICES and the PLAN's request for injunction is permitted under ERISA § 502(a)(3).  Such a request is the only remedy BH SERVICES and the PLAN have to ensure that further dissipation of PLAN assets do not occur.

## VII.

## SECOND CAUSE OF ACTION: REQUEST FOR AN ACCOUNTING
## OF PLAN ASSETS

7.01     The allegations set forth in Sections 1.01 through 6.04 of this Complaint are hereby reasserted and fully incorporated by reference.

7.02.    FCE and TMS have a contractual and/or fiduciary duty to maintain appropriate financial records for the PLAN and to account for all PLAN assets.  FCE and TMS have actual and/or constructive knowledge of fiduciary breaches by each other related to the failure to account for all of the PLAN assets, as set forth above.

7.03     In accordance with ERISA § 502(a)(3), BH SERVICES and the PLAN request that this Court order FCE and TMS account for all PLAN assets from January 1, 2013 to the present and to provide this accounting to BH SERVICES and this Court.  An accounting is the only remedy BH SERVICES and the PLAN have given TMS and FCE's refusal to maintain appropriate financial records for the PLAN and to account for all PLAN assets, in addition to their actions to thwart an accounting by the independent accountant, Ketel Thorstenson.

## VIII.
## THIRD CAUSE OF ACTION: RECOVERY OF PLAN ASSETS
## WRONGFULLY DISSIPATED

8.01     The allegations set forth in Sections 1.01 through 7.03 of this Complaint are hereby reasserted and fully incorporated by reference.

8.02     In the event that an accounting demonstrates that PLAN assets have been dissipated in violation of ERISA or in breach of FCE's and TMS' fiduciary duties, BH SERVICES and the PLAN request the Court order FCE, ACEC and TMS to restore all such dissipated PLAN assets.  FCE, ACEC and TMS have actual and/or constructive knowledge of fiduciary breaches by each other related to the failure to account for all of the PLAN assets, and wrongful withholding of PLAN assets, as set forth above.

8.03    An order to return PLAN assets to the PLAN is authorized under ERISA § 502(a)(3)(B)(i).

## IX
## FOURTH CAUSE OF ACTION: DAMAGES FOR
## BREACH OF FIDUCIARY DUTY AND BREACH OF FIDUCIARY DUTY BY CO-FIDUCIARIES

9.01    The allegations set forth in Sections 1.01 through 8.03 of this Complaint are hereby reasserted and fully incorporated by reference.

9.02    TMS is a named fiduciary under the PLAN documents.  FCE and TMS breached fiduciary duties arising out of their roles as PLAN provider, third-party administrator exercising control and/or ownership over the assets, and as trustee.   TMS, ACEC and FCE agreed to allow FCE and ACEC this control and authority over PLAN assets, knowingly participating in this decision.   All parties also knew that FCE and ACEC had control and authority over assets.  FCE is also a fiduciary as to all charges and costs associated with the plan due to its receipt of commissions on insurance policies issued for the benefit of the PLAN, its receipt of trust fees that were rebating by the trustee back to FCE and/or its owners, and other excessive charges issued to the PLAN upon which it asserted control or authority.   TMS, ACEC and FCE failed  to comply with their own duties, including fiduciary duties, in allowing FCE and ACEC to exercise control over these assets and not return them to the PLAN, and both FCE, ACEC and TMS failed to take any reasonable efforts to remedy these problems or return the assets to the PLAN.  TMS, FCE and ACEC also breached fiduciary duties in charging excessive fees to the PLAN, dissipating PLAN assets.   Additionally, FCE and ACEC are fiduciaries because they have exercised control and authority over the management of PLAN assets as set forth above.  They have also exercised discretionary authority and responsibility in the administration of the PLAN as set forth above.

9.03    FCE and ACEC are also co-fiduciaries with TMS for all purposes of losses to PLAN assets, the failure to transfer PLAN and excessive charges from PLAN assets.  FCE and ACEC have also exercised control and authority over the management of PLAN assets, as evidenced by their ownership of those assets.  FCE and ACEC have also exercised discretionary authority and responsibility in the administration of the PLAN, as evidenced by their decision to own these PLAN assets.  FCE and its owners also received fees that were intended to be for the benefit of the trustee in exercise of his fiduciary duties, and therefore also exercised discretionary, authority and responsibility of these trust assets.  The authority or control FCE and ACEC exercised was not ministerial in nature.   As such, FCE and ACEC are clearly fiduciaries under ERISA.  These acts were done in violation of the Trust Agreement, which required TMS to receive and hold PLAN assets.  FCE and ACEC, with the knowledge, consent and assistance of TMS, violated this provision of the Trust Agreement and exercised control and authority over these assets.  TMS agreed to allow FCE and ACEC this control and authority over PLAN assets, knowingly participating in this decision.  ACEC, TMS and FCE failed to comply with their own duties, including fiduciary duties, in allowing FCE and ACEC to exercise control over these assets and not return them to the PLAN, and FCE, ACEC and TMS failed to take any reasonable efforts to remedy these problems or return the assets to the PLAN.  ACEC, TMS and FCE failed to comply with their own duties, including fiduciary duties, in allowing excessive charges against PLAN assets, and FCE, ACEC and TMS failed to take any reasonable efforts to remedy such excessive charges or return the assets to the PLAN.

9.04    As a result of numerous breaches of fiduciary duty the PLAN and BH SERVICES have suffered monetary damages.

9.05    Under ERISA §§ 405 and 409, and 502(a)(2), the PLAN and BH SERVICES are

entitled to be made whole for their monetary damages by FCE, ACEC and TMS, and are also entitled to other appropriate relief.

**X**
**FIFTH CAUSE OF ACTION: ATTORNEY'S FEES and COSTS**

10.01   The allegations set forth in Sections 1.01 through 9.04 of this Complaint are hereby reasserted and fully incorporated by reference.

10.02   Under ERISA § 502(g), BH SERVICES and the PLAN are entitled to an award of their attorney's fees and costs associated with their ERISA claims.

**XI**
**SIXTH CAUSE OF ACTION: BH SERVICE'S**
**COMMON LAW FRAUD UNDER STATE LAW AS TO FCE AND TRANSAMERICA**

11.01   BH SERVICES repeats and re-alleges the material allegations in the preceding paragraphs 1.01 through 10.02.  BH SERVICES' fraud claims do not concern or relate to the administration of benefits under ERISA and are therefore outside the statute.  These claims are solely limited to fraud in the inducement to contract with various parties.

11.02   FCE made fraudulent misrepresentations and fraudulently omitted revealing material information all in an effort to induce BH SERVICES, in its capacity as PLAN Sponsor, to contract with BH SERVICES for (i) the provision of plan documents, compliance services and to use them as the plan administrator; (ii) to use Marilyn Ward as a trustee, to pay Ward significant fees that would be rebated back to FCE (iii) to use TMS as trustee (an FCE related entity) and to pay TMS significant fees and to cover up the theft or loss of plan assets and (iv) to allow the PLAN to hire FCE's agent Ineich & Company to act as "independent auditor" of the PLAN.   These fraudulent representations and omissions include, but are not limited to, representations and omissions described in paragraphs 5.02 through 5.14.  Prior to adopting the plan, FCE never informed BH SERVICES and the PLAN that it would own the insurance

policies or other assets that comprised PLAN assets.  FCE never informed BH SERVICES and the PLAN that it would seek to retain PLAN assets for its own benefit.  FCE never informed BH SERVICES and the PLAN that its use of trustees would be a ruse to cover up the fact that FCE would exercise ownership and control over PLAN assets.   Moreover, FCE never informed BH SERVICES that it would utilize accountants and/or auditors that were subject to its control, and never informed BH SERVICES that Ineich & Company was its own auditors/accountants.  FCE never informed BH SERVICES and the PLAN that it would use accountants and auditors that would shield the expenses and assets of the PLAN from BH SERVICES and the PLAN.  FCE and its owners at all times represented that it would act in the best interests of BH SERVICES and the PLAN and that it would run the PLAN in a responsible, economically viable manner. Additionally, FCE never informed BH SERVICES and the PLAN that Ward would rebate her fees back to FCE and its owners.   FCE had  a duty to tell BH SERVICES and the PLAN the truth about such misrepresentations and omissions.  Had the truth been told about these matters, BH Services would have never agreed to hire FCE, Ward, TMS or Ineich & Company.

11.03   These representation and omissions were material.  When FCE made such representations and omissions to BH SERVICES as described above, it either knew the representations were false or made them recklessly, as a positive assertion, without knowledge of their truth and with a duty to tell BH SERVICES the truth.  FCE also made such representation knowing or believing they were materially misleading because it left out unfavorable information.

11.04  Transamerica, by and through its agents Gary Beckman and Steve Porter, also made material misrepresentation and omissions of fact so that the PLAN would purchase its insurance policies.   These agents, acting with apparent and actual authority of Transamerica,

failed to disclose to BH SERVICES that BH SERVICES, the PLAN or the trustee would not own these insurance policies, that a third party would be the owner of any policies insuring BH SERVICES' participants, that BH SERVICES funds would be used to build up a cash surrender value that would benefit third parties, and that the cash surrender value could be accessed by third parties.

11.05   These omissions were material and made to induce BH SERVICES to purchase the policies from Transamerica.  When Transamerica made such representations and omissions to BH SERVICES as described above, they either knew the representations were false or made them recklessly, as a positive assertion, without knowledge of their truth and with a duty to tell BH SERVICES the truth.  Transamerica also made such representation knowing or believing they were materially misleading because it left out unfavorable information.

11.06   These representations and omissions were made with the intent to deceive BH SERVICES and with the intent that BH SERVICES would rely on them in acting as Sponsor of the PLAN.  These misrepresentations and omissions were reasonably relied upon by the BH SERVICES in their business dealings with Transamerica and FCE caused BH SERVICES damages for which it sues.

11.07   The BH SERVICES further sues FCE and Transmerica for punitive damages as a result of its fraudulent conduct.

## XII.
### SEVENTH CAUSE OF ACTION:
### UNJUST ENRICHMENT AGAINST ALL DEFENDANTS

12.01   The allegations of Paragraphs 1.01 through 11.07 are repeated and incorporated in this Cause of action as though fully incorporated herein.

12.02   Defendants obtained funds from the BH SERVICES by conversion, fraud and the

taking of undue advantage of the BH SERVICES in the manners set forth above.  Said actions of the Defendants give rise to a cause of action on behalf of the Plaintiff under the equitable remedy of unjust enrichment, which cause of action is hereby stated.

## XIII.
## DISCOVERY RULE

13.01   Plaintiffs re-allege and incorporate all of the allegations in paragraphs 1 through 12.02 above.

13.02   Plaintiffs hereby affirmatively plead the discovery rule and would show that Plaintiffs' claims are not barred by limitations and accrued only when Plaintiffs discovered or, in the exercise of reasonable diligence, should have discovered the facts giving rise to their causes of action.  This suit is brought within one year of when Plaintiffs knew or should have known of the existence of the causes of action described above.

## XIV.
## DAMAGES

14.01   BH SERVICES and the PLAN sue for the value of the Plan assets which Defendants have refused to transfer.  BH SERVICES sues for return of all fees paid to Defendants in it capacity as PLAN Sponsor since 2013.  BH SERVICES have also incurred thousands of dollars in professional fees, including attorneys' fees, caused by the Defendants' actions herein and BH SERVICES sues for recovery of all such professional fees.  These damages are still accruing.

## XV.
## RELIEF REQUESTED

WHEREFORE, BH SERVICES and the PLAN requests that:

1.      FCE, TMS, ACEC and Transamerica be cited to appear and answer;

2.      BH SERVICES recover their actual damages from all Defendants on its state law

claims;

3.       All PLAN assets wrongfully dissipated be returned to the PLAN by FCE, ACEC and TMS;

4.       BH SERVICES and the PLAN recover all attorney's fees and costs under ERISA § 502(g) on all ERISA claims;

5.       BH SERVICES recover punitive damages from all Defendants on its state law claims;

6.       The Court appoint an independent auditor at the expense of Defendants to audit the books and records of Defendants related to the Plan and provide a detailed accounting of Plan assets to BH SERVICES, the PLAN and this Court;

7.       The Court issue an injunction freezing PLAN assets and prohibiting FCE, ACEC or TMS from paying out any PLAN Assets to FCE, ACEC, TMS or any other party until an accounting is performed and the Court approves such accounting;

8.       BH SERVICES recover its attorney's fees on its claims under state law;

9.       BH SERVICES recover costs of suit on its claims under state law;

10.      BH SERVICES and the PLAN (as applicable) recover prejudgment and post-judgment interest at the highest rate allowed by law; and

11.      BH SERVICES and the PLAN be awarded other and further relief, in law or in equity, special or general, to which BH SERVICES and the PLAN may be justly entitled.

BH SERVICES and the PLAN also demand a jury trial.

Respectfully submitted,

BANGS, McCULLEN, BUTLER, FOYE
& SIMMONS, L.L.P.


By:     */s/ Jeffrey Hurd*

Jeffrey G. Hurd
(jhurd@bangsmccullen.com)
333 West Boulevard, Suite 400
P.O. Box 2670
Rapid City, SD  57709
Telephone: 605-343-1040
Facsimile: 605-343-1503

Anthony L. Vitullo
Texas State Bar No. 2059550
Jon D. Azano
Texas State Bar No. 24031835
FEE, SMITH, SHARP & VITULLO, LLP
Three Galleria Tower
13155 Noel Road, Suite 1000
Dallas, TX 75240
(972) 934-9100 Telephone
(972) 934-9200 Facsimile
lvitullo@feesmith.com
*Pro Hac Vice*

and

John L. Malesovas
Texas State Bar No. 12857300
MALESOVAS LAW FIRM
1801 S. Mopac Expressway, Suite 320
Austin, TX 78746
(512) 708-1777 Telephone
(512) 708-1779 Facsimile
john@malesovas.com
*Pro Hac Vice*

**ATTORNEYS FOR PLAINTIFF**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 28, 2016, I electronically filed the foregoing document with the Clerk of the Court for the United States District Court, Western Division of South Dakota, using the electronic case filing system of the Court.  The electronic filing system sent a "Notice of Electronic Filing" to attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.  Any other attorneys of record have been served by U.S. first class mail, postage prepaid, in accordance with the Federal Rules of Civil Procedure.

Heather C. Sazma
Jeana L. Goosman
Goosmann Law Firm, PLC
5010 South Minnesota Avenue
Sioux Falls, SD  57108
*605-275-2039 Facsimile*
sazamah@goosmannlaw.com
goosmannj@goosmannlaw.com
***Attorneys for Defendant, FCE Benefit Administrators, Inc.***

Marc Andrew Koonin (*Pro Hac Vice*)
Robert Douglas Eassa (*Pro Hac Vice*)
Sedgwick LLP
333 Bush Street, 30th Floor
San Francisco, CA  94104-2834
*415-781-2635 Facsimile*
marc.koonin@sedgwicklaw.com
christine.williams@sedgwicklaw.com
***Attorneys for Defendant, FCE Benefit Administrators, Inc.***

*/s/ Jeffrey Hurd*
Jeffrey G. Hurd