UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| BH SERVICES INC., FOR ITSELF AS SPONSOR AND FIDUCIARY AND FOR THE BH SERVICES, INC., HEALTH AND WELFARE PLAN<br><br>Plaintiff,<br><br>vs.<br><br>FCE BENEFIT ADMINISTRATORS INC., TRUST MANAGEMENT SERVICES, ACEC MW, and TRANSAMERICA LIFE INSURANCE COMPANY,<br><br>Defendants. | 5:16-CV-05045-KES<br><br><br>MEMORANDUM OPINION AND ORDER |

Currently pending before the court are several motions. Defendant FCE Benefit Administrators Inc., moves to dismiss counts six and seven of the first amended complaint and moves to strike paragraph 5.13 from the first amended complaint. Docket 33. Defendant Transamerica Life Insurance Company also moves to dismiss counts six and seven of the first amended complaint, which are the only two counts pled against Transamerica. Docket 52. Defendant ACEC MW[1] moves to dismiss count seven of the first amended complaint.

---

[1] In its motion to dismiss, ACEC states that its actual name is "American Council of Engineering Companies of Metropolitan Washington" and not "ACEC MW." Docket 64 at 1. Because none of the parties have filed a motion to amend, the court refers to it by the name alleged in the first amended complaint.

Docket 64. Plaintiff, BH Services, Inc., opposes each of the motions to dismiss and the motion to strike. *See* Dockets 39, 74, 75. For the reasons that follow, the court grants the motions to dismiss and denies the motion to strike.

**FACTUAL BACKGROUND**

The facts as alleged in the first amended complaint are as follows:

BH Services is a not-for-profit corporation based in Rapid City, South Dakota, providing employment to over 200 people in Nebraska and South Dakota. *See* Docket 28 ¶ 2.01. BH Services is the sponsor, administrator, and named fiduciary of the BH Services, Inc. Health and Welfare Plan (the Plan). *Id.* The Plan is an "employee welfare benefit plan" as defined by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461 (2012). *Id.* ¶ 2.02. The Plan also includes a health reimbursement account. *Id.* The Plan is funded by BH Services' general assets, which are placed in a trust account to cover the Plan's claims and expenses. *Id.*

From 1995 to 2015, BH Services retained FCE to provide a plan document, compliance services, and third-party administrative services for the Plan. *Id.* ¶ 5.01. Prior to 2013, FCE hired Marilyn Ward and Vivian Lewis to act as trustees of the Plan's assets. *Id.* ¶¶ 1.02, 5.01. Upon their retirement, FCE hired defendant Trust Management Services (TMS) to serve as an independent trustee of the Plan's assets.[2] *Id.* ¶¶ 1.02, 5.01. Because FCE and TMS had the

---

[2] BH Services later discovered that trustee Ward did not actually "retire." Instead, Ward resigned due to an investigation for alleged embezzlement of Plan assets under her control as trustee for the Plan. Docket 28 ¶ 5.03. BH Services also discovered that TMS was not an "independent trustee"

discretionary authority and control to manage the Plan, dispose of Plan assets, and administer the Plan, both entities were Plan fiduciaries.[3] *Id.* ¶¶ 2.03, 2.04. As fiduciaries, FCE and TMS were responsible for operating the Plan and protecting the Plan's assets. *Id.* ¶¶ 2.03, 2.04.

Initially, BH Services was told by FCE and its owners that, consistent with the Plan documents and BH Services' instructions, BH Services sponsored group term life insurance benefits and a health reimbursement account for the employees and participants of the Plan. *See id.* ¶¶ 1.03, 5.05. After receiving some conflicting financial information from FCE, however, BH Services began to engage in a long process to attempt to uncover what assets the Plan actually owned. *Id.* ¶¶ 1.03, 5.05.  As part of this process, BH Services was asked by FCE and TMS to use the accounting firm Ineich & Company to do an independent audit of the Plan's assets.[4] *Id.* ¶ 5.04.

The initial result of BH Services' investigation into the Plan's assets was the discovery that instead of working to provide plan members with group term life insurance—as FCE and TMS were directed to do by BH Services—FCE and its agents contracted with Transamerica Life Insurance Company to provide plan members with cash accounts in at least two master group variable universal life insurance policies (Transamerica policies). *See id.* ¶¶ 1.03, 5.05.

---

because at the time TMS was hired by FCE to serve as trustee, it had a prior undisclosed relationship with FCE. *Id.*

[3] Defendant ACEC is also alleged to be a plan fiduciary. Docket 28 ¶ 2.05.

[4] BH Services later discovered in mid-2016 that Ineich & Company was not an independent auditor and instead was the auditor and accountant for both FCE and ACEC. Docket 28 ¶ 5.04.

Following this discovery, BH Services contacted Transamerica to obtain additional information about the policies. *Id.* ¶ 5.06. BH Services' request resulted in Transamerica sending to BH Services a spreadsheet showing that the Transamerica policies were not owned by TMS as trustee of the Plan's assets, but rather that the policies were owned by FCE and ACEC, another multiple welfare benefit plan. *Id.* BH services also discovered that its Transamerica policies were further comingled with master group variable universal life insurance policies from 50 other employers. *Id.* Those other policies were also controlled by FCE and ACEC. *Id.* Because FCE and ACEC were the owners of the Transamerica policies, they, along with TMS as trustee of the Plan's assets, were able to hide the cash surrender value of these policies, which were Plan assets, from BH Services. *Id.* ¶ 5.07. FCE, ACEC, and TMS also had the ability to freely access and use the cash surplus built up from the Transamerica policies without BH Services' knowledge. *Id.*

As a result of the mismanagement of Plan assets by FCE and TMS, in 2015, BH Services began to look for a new third-party administrator of the Plan. *Id.* ¶¶ 1.05, 5.01. BH Services eventually transferred plan documents, compliance services, and third-party administrative services for the Plan to Fringe Benefits Group. *Id.* ¶¶ 1.05, 5.01. On October 28, 2015, BH Services provided written notification to FCE and TMS of its intent to terminate their services within 60 days. *Id.* ¶ 5.01. And on December 15, 2015, BH Services directed FCE and TMS to transfer all of the Plan's assets to the new plan administered by Fringe Benefits Group. *Id.* ¶ 5.01. Despite BH Services'

4

multiple attempts, FCE and TMS have yet to transfer the Plan's assets, totaling more than $735,000, to Fringe Benefits Group. *See id.* ¶¶ 1.06, 5.02.

In October 2016, BH Services discovered that independent audit reports from the other 50 employers participating in the comingled master group variable universal life insurance policies issued by Transamerica showed that those employers reported that they paid premiums for group term life insurance policies. *Id.* ¶ 5.09. After comparing these independent audit reports to the information provided to BH Services from Transamerica, however, BH Services discovered that those employers, like BH Services, actually were paying money into the comingled master group variable universal life insurance policies owned by FCE and ACEC. *Id.* Based upon these independent audit reports, BH Services believes that it has an undisclosed amount of cash sitting in participant accounts at Transamerica. *Id.*

The independent audit reports also led BH Services to learn that certain plan participants had their life insurance coverage and other participant accounts in an FCE "warehouse". *Id.* ¶ 5.10. FCE failed to disclose the existence of these "warehoused" accounts to BH Services. *Id.* And because there has been no accounting of these undisclosed "warehoused" accounts, it appears that TMS, as trustee for the Plan, allowed the accounts to be held by FCE and ACEC individually rather than by the Plan. *Id.*

BH Services further discovered that neither FCE nor TMS could account for the source of funds or benefit payments associated with the Plan's health reimbursement account. *Id.* ¶ 5.11. It appears that FCE used the cash values

5

from the Transamerica policies to provide unemployment compensation and health reimbursement account benefits but the premiums charged for those benefits by FCE and TMS were in excess of the funding necessary to pay the amount of both the actuarially predicted and the actual claims made. *Id.* Because there has been no accounting, BH Services is unaware of what FCE, TMS, and ACEC did with these excess funds. *Id.*

Due to the conflicting financial information that BH Services uncovered, BH Services retained Ketel Thorstenson, LLP, to conduct an independent audit of the Plan and the Plan's assets. *See id.* ¶¶ 1.07, 5.12. In October 2016, Ketel Thorstenson issued an adverse auditor's report. *Id.* ¶¶ 1.07, 5.12. The adverse auditor's report was issued because of FCE's and TMS's refusal to provide support and documentation regarding the Plan's asset transactions, the amount of the cash values in the Transamerica policies, and the source of funds or benefits paid from the health reimbursement account in the Plan. *Id.* ¶¶ 1.07, 5.12. Because the Transamerica policies are Plan assets, BH Services contends that Transamerica has allowed these insurance policies to be withheld from control of the Plan and dissipated by excessive fees and charges. *Id.* ¶ 1.07.

Following BH Services' receipt of Ketel Thorstenson's adverse auditor's report, BH Services learned that the United States Secretary of Labor has brought a lawsuit against FCE and its owners. *See id.* ¶ 5.13. This lawsuit, *Thomas E. Perez v. Chimes District of Columbia, Inc.*, Civil Action No. RDB-15-

3315 (*Chimes* litigation),[5] is pending in the United States District Court for the

District of Maryland. *Id.* In that suit, the Secretary of Labor makes allegations

against FCE that are similar to the allegations against FCE in this current

dispute. *Id.*

## PROCEDURAL BACKGROUND

On June 10, 2016, BH Services filed a complaint naming FCE and TMS

as defendants. Docket 1 ¶¶ 2.03, 2.04. FCE responded to the complaint on

October 11, 2016, by filing both a motion to dismiss (Docket 20) and a motion

to transfer venue (Docket 23). On October 28, 2016, BH Services amended its

complaint as a matter of course under Rule 15(a)(1)(B) of the Federal Rules of

Civil Procedure.[6] *See* Docket 28. The first amended complaint added ACEC and

Transamerica as defendants. *Id.* ¶¶ 2.05, 2.06.

In total, the first amended complaint alleges seven causes of action

against FCE, TMS, ACEC, and Transamerica. Count one seeks an injunction

against FCE, TMS, and ACEC under 29 U.S.C. § 1132(a)(3). Count two requests

an accounting of the Plan's assets under 29 U.S.C. § 1132(a)(3) against FCE

and TMS. Count three seeks the recovery of wrongfully dissipated Plan assets

---

[5] This lawsuit is now styled *Edward C. Hugler v. Chimes District of Columbia, Inc.*, Civil Action No. RDB-15-3315, to reflect the change in name of the Acting Secretary of Labor. *See Hugler v. Chimes Dist. of Columbia, Inc.*, No. RDB-15-3315, 2017 WL 1322109 (D. Md. Apr. 6, 2017).

[6] FCE's motion to dismiss the original complaint became moot after BH Services amended its complaint as a matter of course. *See Pure Country, Inc. v. Sigma Chi Fraternity*, 312 F.3d 952, 956 (8th Cir. 2002) ("If anything, [plaintiff's] motion to amend the complaint rendered moot [defendant's] motion to dismiss the original complaint." (citation omitted)).

against FCE, TMS, and ACEC under 29 U.S.C. § 1132(a)(3)(B)(i). Count four seeks damages against FCE, TMS, and ACEC for the breach of fiduciary duty and breach of fiduciary duty by co-fiduciaries under 29 U.S.C. §§ 1105, 1109, and 1132(a)(2). Count five seeks an award of attorney's fees and costs under 29 U.S.C. § 1132(g) against FCE, TMS, and ACEC. Count six seeks damages, including punitive damages, against FCE and Transamerica for common law fraud under state law. Count seven seeks damages for unjust enrichment against FCE, TMS, ACEC, and Transamerica.

FCE responded to the first amended complaint on November 14, 2016, by filing a motion to dismiss counts six and seven for a failure to state a claim and a motion to strike paragraph 5.13 of the first amended complaint, which references FCE's involvement in the *Chimes* litigation. Docket 33. FCE also has answered counts one through five of the first amended complaint. Docket 37. Transamerica responded to the first amended complaint on January 20, 2017, by filing a motion to dismiss counts six and seven of the first amended complaint for failure to state a claim, which are the only two counts alleged against Transamerica. Docket 52. ACEC responded to the first amended complaint on February 2, 2017, by filing a motion to dismiss count seven.[7] Docket 64.

BH Services filed TMS's waiver of service on March 13, 2017. Docket 83. Under this waiver, TMS had until May 12, 2017, to respond to the first amended complaint. TMS failed to file an answer or responsive motion to the

---

[7] ACEC has not answered or otherwise responded to counts one, three, four, and five of the first amended complaint.

first amended complaint. Thus, BH Services moved for a clerk's entry of default against TMS, Docket 85, which was entered on May 19, 2017. Docket 86. Since the clerk's entry of default was entered, TMS has moved to vacate the clerk's entry of default. Docket 88. This motion is still pending.

## LEGAL STANDARD

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Inferences are construed in favor of the nonmoving party. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). In ruling on a motion to dismiss, courts can also "consider 'those materials that are necessarily embraced by the pleadings.' " *Hughes v. City of Cedar Rapids*, 840 F.3d 987, 998 (8th Cir. 2016) (quoting *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014)). "Those materials include 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings.' " *Id.* (quoting *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820 (8th Cir. 2003)).

Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A court may act on its own or "on motion made by a party either before responding to the pleading or, if a response if not allowed, within 21 days after being served with the pleading." Fed. R. Civ. P. 12(f)(1)-(2). "Judges enjoy liberal discretion to strike pleadings under Rule 12(f)." *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007). "Despite this broad discretion however, striking a party's pleadings is an extreme measure, and, as a result, [the Eighth Circuit has] previously held that '[m]otions to strike under Fed. R. Civ. P. 12(f) are viewed with disfavor and infrequently granted.' " *Stanbury Law Firm v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000) (first alteration added) (quoting *Lunsford v. United States*, 570 F.2d 221, 229 (8th Cir. 1977)); *see also* 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure*, § 1380 (3d ed. 1998) (observing that courts infrequently grant and disfavor motions to strike due to the drastic nature of the remedy and because motions to strike are often used as a dilatory or harassing tactic).

## DISCUSSION

## I.    Motions to Dismiss – ERISA Preemption

Each of the motions to dismiss portions of the first amended complaint filed by FCE, ACEC, and Transamerica, argue for dismissal of either count six, count seven, or both on the basis that the state-law causes of action alleged by BH Services are preempted by ERISA. *See* Dockets 34, 53, 65. BH Services

contends that counts six and seven of the first amended complaint are not preempted by ERISA. *See* Dockets 39, 74, 75.

Courts have long recognized that "ERISA . . . is a comprehensive statute that sets certain uniform standards and requirements for employee benefit plans." *Ark. Blue Cross & Blue Shield v. St. Mary's Hosp., Inc.*, 947 F.2d 1341, 1343 n.1 (8th Cir. 1991) (*Ark. BCBS*). "Congress enacted ERISA to regulate comprehensively certain employee benefit plans and 'to protect the interests of participants in these plans by establishing standards of conduct, responsibility, and obligations for fiduciaries.' " *Prudential Ins. Co. of Am. v. Nat'l Park Med. Ctr., Inc.*, 413 F.3d 897, 906-07 (8th Cir. 2005) (quoting *Johnston v. Paul Revere Life Ins. Co.*, 241 F.3d 623, 628 (8th Cir. 2001)). " 'To meet the goals of a comprehensive and pervasive Federal interest and the interests of uniformity with respect to interstate plans, Congress included an express preemption clause in ERISA for the displacement of State action in the field of private employee benefit programs.' " *Minn. Chapter of Associated Builders & Contractors, Inc. v. Minn. Dep't of Pub. Safety*, 267 F.3d 807, 810 (8th Cir. 2001) (*Associated Builders*) (quoting *Wilson v. Zoellner*, 114 F.3d 713, 715-16 (8th Cir. 1997)).

There are two types of preemption under ERISA: "complete preemption," under 29 U.S.C. § 1132, and "express preemption," under 29 U.S.C. § 1144. *Prudential Ins.*, 413 F.3d at 908; *see also Dakota, Minn. & E. R.R. Corp. v. Schieffer*, 857 F. Supp. 2d 886, 890 (D.S.D. 2012). Here, the parties cite different types of ERISA preemption to argue why they believe that ERISA does

or does not preempt the state-law causes of action alleged in the first amended complaint. *Compare* Docket 39 at 7 ("Only a state law 'cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy' addresses an area of exclusive federal concern and is subject to complete preemption." (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004))), *and* Docket 75 at 5 (arguing that BH Services' claims are not completely preempted under ERISA), *with* Docket 34 at 8 (citing the test for express preemption under 29 U.S.C. § 1144(a)), *and* Docket 53 at 7 (same), *and* Docket 65 at 9 (same). Thus, because the analyses for the two types of preemption are distinct, the court must determine what type, if any, of ERISA preemption applies here.

## A. Complete Preemption and Express Preemption.

"Complete preemption occurs whenever Congress 'so completely [preempts] a particular area that any civil complaint raising this select group of claims is necessarily federal in character.' " *Prudential Ins.*, 413 F.3d at 907 (alteration in original) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987)). Claims that arise under ERISA's civil enforcement provision, 29 U.S.C. § 1132(a), "including a claim to recover benefits or enforce rights under the terms of an ERISA plan, implicate one such area of complete preemption." *Id.* (citation omitted). Where complete preemption is implicated, "a state-law suit that falls within the scope of [§ 1132(a)] 'arises under federal law and is removable to federal court.' " *Schieffer*, 857 F. Supp. 2d at 890 (quoting *Prudential Ins.*, 413 F.3d at 907). In some respect, it is helpful to think

of complete preemption as a jurisdictional doctrine because complete preemption " 'confers exclusive federal jurisdiction in certain instances where Congress intended the scope of federal law to be so broad as to entirely replace any state-law claim.' " *Id.* (quoting *Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Tr. Fund*, 538 F.3d 594, 596 (7th Cir. 2008)); *see also Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 294 n.6 (3d Cir. 2014) (stating that complete preemption "is a 'jurisdictional concept,' not a substantive concept").

ERISA's express preemption clause, however, only preempts "State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a). "Although express preemption does not allow for automatic removal to federal court, it does provide an affirmative defense against claims not completely preempted under [29 U.S.C. § 1132(a)]." *Prudential Ins.*, 413 F.3d at 907; *see also* 14B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure*, § 3722.2 (4th ed. 2008) (observing that "state law claims that are parallel to [29 U.S.C. § 1144(a)] generally are not treated as completely preempted and, thus, cannot provide the basis for removal, although they may be defensively preempted by federal law."). Under ERISA's express preemption provision, "[t]he term 'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. § 1144(c).

ERISA expressly preempts a state law when it falls into one of two categories. *Gobeille v. Liberty Mut. Ins. Co.*, 136 S. Ct. 936, 943 (2016). The first

category is where a state law "has a 'reference to' ERISA plans." *Id.* (citation omitted). This means that " '[w]here a State's law acts immediately and exclusively upon ERISA plans . . . or where the existence of ERISA plans is essential to the law's operation . . . , that "reference" will result in pre-emption.' " *Id.* (alterations in original) (quoting *Cal. Div. of Labor Standards Enf't v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 325 (1997)). State law can also have "a prohibited 'reference to' ERISA or ERISA plans when that law (1) imposes requirements by reference to ERISA-covered programs, (2) specifically exempts ERISA plans from an otherwise generally applicable statute, or (3) premises a cause of action on the existence of an ERISA plan." *Pharm. Care Mgmt. Ass'n v. Gerhart*, 852 F.3d 722, 728 (8th Cir. 2017) (citation omitted).

The second category of express preemption is where a state law "has an impermissible 'connection with' ERISA plans, meaning a state law that 'governs . . . a central matter of plan administration' or 'interferes with nationally uniform plan administration.' " *Gobeille*, 136 S. Ct. at 943 (alteration in original) (quoting *Egelhoff v. Egelhoff*, 532 U.S. 141, 148 (2001)). "A state law also might have an impermissible connection with ERISA plans if 'acute, albeit indirect, economic effects' of the state law 'force an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict its choice of insurers.' " *Id.* (quoting *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 668 (1995)). These categories of express preemption, "[w]hen considered together, . . . ensure that ERISA's express

pre-emption clause receives the broad scope Congress intended while avoiding the clause's susceptibility to limitless application." *Id.*

## B. Express Preemption Applies Here.

BH Services contends that complete preemption under 29 U.S.C. § 1132(a), and not express preemption under 29 U.S.C. § 1144(a), is the controlling preemption doctrine here because the state-law causes of action alleged in the first amended complaint are separate from ERISA and do not seek relief that "relate[s] to the administration of benefits." Docket 39 at 6; Docket 74 at 3; Docket 75 at 5.[8] Evidence of this, according to BH Services, is found in the first amended complaint, which specifically alleges that the fraud claims "are solely limited to fraud in the inducement to contract with the various parties." Docket 28 ¶ 11.01. Thus, BH Services argues that its claims for fraud and unjust enrichment are not "cause[s] of action that 'duplicate[], supplement[], or supplant[] the ERISA civil enforcement remedy'. . . [and, therefore, are not] subject to complete preemption." Docket 39 at 7 (alterations added) (quoting *Davila*, 542 U.S. at 209). BH Services further argues that a finding of preemption is inappropriate here because "[29 U.S.C. § 1132(a)] . . . 'does not purport to reach every question relating to plans governed by ERISA.' " *Id.* (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 25 (1983)).

---

[8] Because BH Services' preemption argument in response to the motions to dismiss filed by FCE, Transamerica, and ACEC, is identical, *compare* Docket 39 at 6-7, *with* Docket 74 at 3-4, *and* Docket 75 at 5, the court will only cite to one of these responses in addressing BH Services' argument.

BH Services' preemption argument "conflates the complete preemption of [§ 1132(a)] with the express preemption of [§ 1144(a)]." *Schieffer*, 857 F. Supp. 2d at 891. This is because "[t]he 'relate to' language of [§ 1144(a)] is not determinative of whether a state-law suit falls within the scope of [§ 1132(a)]." *Id.* Thinking about complete preemption as a "jurisdictional doctrine" is helpful here. *See id.* at 890 (citing *Franciscan Skemp*, 538 F.3d at 596). This is because where a case is already properly filed in federal court and alleges both violations of ERISA and violations of state law, the preemption issue posed is not whether the case could have been removed to federal court because the state-law causes of action duplicate the remedies expressly provided by a federal statute. *See id.* at 892 (citing *Davila*, 542 U.S. at 207-08). Instead, the preemption issue becomes whether the alleged state-law causes of action are preempted because they "relate to" ERISA by having a "reference to" or a "connection with" an ERISA plan. *See, e.g.*, *In Home Health, Inc. v. Prudential Ins. Co. of Am*, 101 F.3d 600, 604 (8th Cir. 1996) ("A state law relates to an ERISA plan when the state law has a connection with or reference to such a plan." (internal marks and citation omitted)). Thus, because the real issue presented and briefed by the parties is whether BH Services' causes of action for fraud and unjust enrichment "relate to" the operation of the Plan, the court concludes that express preemption under 29 U.S.C. § 1144(a), and not complete preemption, provides the controlling analysis.[9]

---

[9] A brief review of the cases cited by BH Services in support of its argument that the fraud and unjust enrichment causes of action are not preempted by

## C. Counts Six and Seven of the First Amended Complaint are Expressly Preempted by ERISA.

Because the express preemption analysis for counts six and seven of the

first amended complaint is identical, the court will analyze the counts together.

As noted previously, a state law "relates to" ERISA and is subject to express

preemption if the state law contains a "reference to" or has a "connection with"

an ERISA plan.[10] *Gerhart*, 852 F.3d at 728 (citation omitted). Because the

"relates to" test under § 1144(a) is disjunctive, courts often determine whether

express preemption is necessary by analyzing only one of the two prongs. *See,*

*e.g.*, *id.* at 730 ("Where a State law is preempted because it has a prohibited

'reference to' ERISA or ERISA plans, we need not reach the question of whether

it is also preempted under the 'connection with' prong of the analysis." (citation

omitted)); *Eckelkamp v. Beste*, 315 F.3d 863, 870 (8th Cir. 2002) (conducting

---

ERISA also supports the finding that express preemption, and not complete preemption, controls here. *See, e.g.*, *Wilson*, 114 F.3d at 716-17 (citing 29 U.S.C. § 1144(a) and stating that because "the Missouri tort of negligent misrepresentation does not contain a prohibited reference to an ERISA plan, [the court] must determine if Wilson's action against Zoellner has a prohibited 'connection' with an ERISA plan.); *In Home Health*, 101 F.3d at 604 (framing the issue as "whether ERISA preempts state tort claims by a third-party provider who sues the administrator of an ERISA plan, suing not as an assignee of an ERISA beneficiary but as an independent entity claiming damages" and analyzing the issue using "[t]he 'relates to' language in 29 U.S.C. § 1144(a)").

[10] A prerequisite to any preemption analysis is the existence of an ERISA plan. *See Johnston*, 241 F.3d at 629 ("As a preliminary matter, we must determine if the disability insurance policy at issue was a 'plan' within the meaning of ERISA because the existence of a 'plan' is a prerequisite to the jurisdiction of ERISA."). Because the first amended complaint recites that the Plan "is an employee welfare benefit plan as defined by [29 U.S.C. § 1002(1)]," Docket 28 ¶ 2.02, and the parties do not dispute the existence of a valid ERISA plan, the court concludes that the Plan is a "plan" under ERISA.

the express preemption analysis solely under the "connection with" prong);
*Shea v. Esensten*, 208 F.3d 712, 717-18 (8th Cir. 2000) (analyzing the
preemption defense to determine if there was a "connection with" an ERISA
plan because "Minnesota's law of negligent misrepresentation is a tort law of
general application" and thus could not expressly reference an ERISA plan).
Thus, because the common law causes of action of fraudulent inducement and
unjust enrichment make no explicit "reference to" ERISA or the Plan, the
court's preemption analysis here will only focus on whether these causes of
action have a "connection with" the Plan.

The Eighth Circuit has identified several factors that courts can rely on
to determine whether a state law "relates to" an ERISA plan and is therefore
expressly preempted by ERISA. *See Ark. BCBS*, 947 F.2d at 1344-45. These
factors include:

> [1] whether the state law negates an ERISA plan provision,
> [2] whether the state law affects relations between primary ERISA
> entities, [3] whether the state law impacts the structure of ERISA
> plans, [4] whether the state law impacts the administration of
> ERISA plans, [5] whether the state law has an economic impact on
> ERISA plans, [6] whether preemption of the state law is consistent
> with other ERISA provisions, and [7] whether the state law is an
> exercise of traditional state power.

*Wilson*, 114 F.3d at 717 (alterations in original) (quoting *Ark. BCBS*, 947 F.2d
at 1344-45). Because no single factor is determinative, courts look at the
totality of a state law's impact on an ERISA plan to determine if express
preemption is necessary. *Ark. BCBS*, 947 F.2d at 1345.

### 1. Negation of a Plan Provision

As a portion of the Third Party Administrator (TPA) Agreement[11] between BH Services and FCE shows, some of FCE's duties for the Plan included "establishing and maintaining insurance and reinsurance coverage of the plans" and "conducting ongoing coordination with insurance and reinsurance underwriters." Docket 35-3 at 5. To allow BH Services to recover from FCE and Transamerica for their alleged fraud and from FCE, Transamerica, and ACEC for their alleged unjust enrichment could negate this portion of the TPA agreement. *See Ark. BCBS*, 947 F.2d at 1346 (concluding that first factor weighed in favor of preemption where state law at issue negates a provision of an ERISA plan); *see also Associated Builders*, 267 F.3d at 816 (finding that because the state law "dictate[d] the terms of what constitutes an approved apprenticeship program, it negate[d] plan provisions."). Thus, because the common law claims could negate a portion of the TPA Agreement and alter FCE's duties under the Plan, the court concludes that the first factor weighs in favor of preemption.

### 2. Effect on Primary ERISA Entities and Impact on Plan Structure

Courts consider the second and third factors together. *Ark. BCBS*, 947 F.2d at 1346. The primary entities under ERISA are "the employer, the plan,

---

[11] Although the Plan is alleged to consist of several different documents, *see* Docket 34 at 6 n.4, it does not appear that the documents cited by the parties are full copies of documents. The parties have, however, submitted "portions" of the Plan and other relevant governing documents. Docket 35 at 1. *See also* Dockets 35-1, 35-2, and 35-3. The court notes that a full copy of Docket 35-3 appears to be located at Docket 22-3.

the plan fiduciaries, and the beneficiaries." *Id.* Here, BH Services is the employer for the Plan and brings this action on behalf of the Plan. Docket 28 ¶ 2.01. And FCE and ACEC are fiduciaries of the Plan. *Id.* ¶¶ 2.03, 2.05. Although BH Services does not allege that Transamerica is a Plan fiduciary, all of Transamerica's wrongful acts were allegedly committed by Gary Beckman and Steve Porter as agents of Transamerica. *Id.* ¶¶ 11.04, 5.05.

BH Services argues that because the fraud and unjust enrichment claims against Transamerica "will not affect any ERISA relationship or ERISA provision," the court should not find those claims preempted. Docket 75 at 8. As just described, however, BH Services' allegations against Transamerica are tied to the acts of its agents Beckman and Porter who are the owners of FCE—a primary ERISA entity. Docket 28 ¶¶ 11.04, 5.05. Because Beckman and Porter own FCE, the court finds that it would be impossible for the court to separate FCE's potential liability from Transamerica's potential liability. Thus, any recovery for BH Services on its common-law claims will necessarily impact the relationship between primary ERISA entities. Thus, the second factor weighs heavily in favor of preemption. *See Eckelkamp*, 315 F.3d at 870 (concluding that use of state law by one primary ERISA entity "to sue other primary ERISA entities would doubtless affect their relations.").

Similarly, if BH Services were able to recover on its state-law claims, the structure of the Plan would be impacted in three primary ways. First, recovery by BH Services would dictate what types of life insurance policies could be utilized under the Plan. Second, recovery by BH Services would determine who

could own the life insurance policies purchased by the Plan. Third, a recovery by BH Services would require the Plan's third-party administrator to make specific disclosures about the life insurance policies purchased by the Plan. Thus, because recovery by BH Services on its state-law claims would alter the structure of the Plan, the third factor also weighs in favor of preemption. *Cf. In Home Health*, 101 F.3d at 606 (observing that where allowing a party to proceed with state-law claims "would not impose any additional administrative duties upon [a plan administrator] or require a change in administrative procedures[,]" the third *Ark. BCBS* factor did not weigh in favor of preemption).

In support of its argument that the common-law claims are not preempted by ERISA, BH Services relies heavily on the decisions in *Wilson v. Zoellner*, 114 F.3d 713 (8th Cir. 1997) and in *Airparts Co., Inc. v. Custom Benefit Servs. of Austin, Inc.*, 28 F.3d 1062 (10th Cir. 1994). In BH Services' view, these cases represent "the substantial federal precedent that clearly shows that state law claims that do not relate to the administration of an ERISA plan, such as inducement claims, are not preempted." Docket 74 at 5.

The court disagrees with BH Services' readings of these cases. In both *Wilson* and *Airparts Co.*, the fact that the state-law claims would not impact the relationship between the primary ERISA entities was a critical factor in finding that the state-law claims were not preempted by ERISA. *See Wilson*, 114 F.3d at 718 (observing that where a primary ERISA entity's potential liability came from "the unrelated acts of its agent," then the primary ERISA entity's "relationship with other ERISA entities" was not affected by the plaintiff's

21

lawsuit); *see also Airparts Co.*, 28 F.3d at 1066 ("Plaintiffs' state law claims against [defendant] do not have and will not have any effect whatsoever on the relations among the traditional plan entities."). Because any recovery by BH Services on its state-law claims would impact the relationship between the primary ERISA entities and would impact the structure of the Plan, the court concludes that the second and third factors weigh heavily in favor of preemption of BH Services' state-law claims. *See Ark. BCBS*, 947 F.2d at 1346 (observing where allowing state-law claim to proceed would lead to "change in plan structure and in the relationship of the primary ERISA entities" the second and third factors weighed in favor of preemption).

### 3. Impact on Plan Administration

BH Services alleges that FCE and Transamerica fraudulently induced BH Services to purchase the Transamerica policies. *See* Docket 28 ¶¶ 1.03, 5.05, 11.02. BH Services also alleges that the Transamerica policies are Plan assets, *id.* ¶ 1.07, and that Transamerica, through the fraud of its agents—Beckman and Porter—allowed the true nature of these policies to be withheld from BH Services so that FCE and ACEC could own these policies as third parties. *See id.* ¶ 11.04. Also relevant is BH Services' allegation that FCE, ACEC, and Transamerica took advantage of BH Services in order to wrongfully obtain funds from it. *Id.* ¶ 12.02. Because these allegations, which are central to BH Services' state-law claims, put the administration of the Plan at issue, the fourth factor weighs in favor of ERISA preemption. *See Johnston*, 241 F.3d at 630 (concluding that because the plaintiff's state-law claims "arose from the

administration of an ERISA plan," preemption was warranted because state law had "an impact on plan administration."); *see also Shea v. Esensten*, 107 F.3d 625, 627 (8th Cir. 1997) (finding that preemption was warranted where the outcome of plaintiff's lawsuit would affect future administration of ERISA plans).

### 4.   Economic Impact

BH Services alleges that the fraud of defendants allowed the Transamerica policies, "which are PLAN assets, to be withheld from control of the PLAN and dissipated by excessive fees and charges." Docket 28 ¶ 1.07 (capitalization in original). BH Services further alleges that ACEC and FCE had control of the Transamerica policies and other Plan assets, "which are properly owned by the PLAN." *Id.* ¶ 1.04 (capitalization in original). Because ACEC and FCE hid the existence of these cash values from BH Services, ACEC and FCE could freely access the cash values built up in the Transamerica policies and use that money for whatever purpose they wanted. *See id.* ¶¶ 5.07, 5.08. In situations similar to the one presented here, where the requested relief under state law would require defendants to repay the Plan, the Eighth Circuit has concluded that the fifth factor is implicated and weighs in favor of preemption. *See Eckelkamp*, 315 F.3d at 869-70 (observing that preemption of a state-law claim for breach of fiduciary duty was warranted in part because the relief requested—the repayment of excessive salaries—"would have an economic impact on the plan."). Thus, the court concludes that factor five also weighs in favor of preemption because any money recovered by BH Services' successful

prosecution on its state-law claims would have a direct economic impact on the Plan.

### 5. Consistency with Other ERISA Provisions

In situations where no portion of ERISA is consistent or inconsistent with the state law at issue, the sixth factor is not implicated. *Wilson*, 114 F.3d at 719. While several ERISA provisions regulate the conduct of plan fiduciaries and co-fiduciaries, *see e.g.,* 29 U.S.C. §§ 1104, 1105, 1109, the Eighth Circuit has concluded that ERISA does not preempt state-law claims that do not directly affect ERISA fiduciaries. *See, e.g., Wilson*, 114 F.3d at 720 (concluding that state common-law tort against an insurance agent resulting from his negligent misrepresentation of the coverage under an ERISA plan was not preempted); *In Home Health*, 101 F.3d at 604-07 (finding that ERISA did not preempt state tort claims by a third-party provider against an ERISA plan administrator, where the third-party provider sued "not as an assignee of an ERISA beneficiary but as an independent entity claiming damages."). Here, BH Services alleges that its claim in count six is "solely limited to fraud in the inducement to contract with various parties." Docket 28 ¶ 11.01. And BH Services argues that its unjust enrichment claim from count seven "does not relate to the administration of benefits." Docket 74 at 3. Thus, because the state-law causes of action appear to be neither consistent nor inconsistent with a portion of ERISA, the court concludes that the sixth factor is neutral.

### 6. Traditional Exercise of State Power

Where enforcing a state common law tort is an exercise of traditional state power, courts have concluded that that the seventh factor weighs in favor of preemption. *See, e.g.*, *Wilson*, 114 F.3d at 719-20. But, as the Eighth Circuit has described, "this factor arguably is a policy consideration useful in deciding borderline questions of ERISA preemption." *Ark. BCBS*, 947 F.2d at 1350. Here, the proffered state common-law counts are fraud and unjust enrichment. *See* Docket 28 ¶¶ 11.01-12.02. And as the briefing by the parties demonstrates, the parties disagree as to which state's substantive law should govern the unjust enrichment count and whether the action of unjust enrichment is a recognized common law action in either California or South Dakota.[12] *Compare* Docket 34 at 11 (arguing California law bars plaintiff's unjust enrichment claim), *with* Docket 39 at 11 (arguing that South Dakota law applies but that the unjust enrichment claim is valid under either California or South Dakota law). The court concludes that this case does not present "borderline questions of ERISA preemption." *Ark. BCBS*, 947 F.2d at 1350. Thus, whether the common law actions of fraudulent inducement and unjust enrichment are traditional exercises of state power is irrelevant to the analysis here and the court concludes that the seventh preemption factor is neutral.

---

[12] Because the court resolves this case on preemption grounds, the court need not decide whether unjust enrichment is recognized in either California or South Dakota and, if so, whether it applies under the facts presented here.

### 7. Summary of Factor Analysis

Factors one through five weigh in favor of finding that counts six and seven of the first amended complaint are expressly preempted by ERISA. Factors six and seven are neutral and weigh neither for or against preemption. Thus, having weighed these factors, the court concludes that counts six and seven of the first amended complaint are expressly preempted by ERISA, 29 U.S.C. § 1144(a).

## II. Motion to Strike

FCE moves to strike paragraph 5.13 of the first amended complaint, which references FCE's involvement in the *Chimes* litigation. Docket 33. In its entirety, paragraph 5.13 alleges:

> Most recently, BH SERVICES has learned that the United States Secretary of Labor has brought a lawsuit against FCE Benefit Administrators and its owners Gary Beckman and Stephen Porter. This lawsuit is styled *Thomas E. Perez v. Chimes District of Columbia*, Civil Action No. RDB-12-3315, pending in the United States District Court for the District of Maryland. Like here, the United States Secretary of Labor has alleged that FCE Defendants (FCE and its owners Beckman and Porter) took control over the plan's assets and therefore was a "plan fiduciary" under ERISA. Like here, the lawsuit also alleges that FCE overcharged the plan at issue, fraudulently concealed compensation it received, failed to prudently manage the plan and its assets, and failed to properly administer the plan causing plan losses and improper profits to FCE, including but not limited to excessive fees.

Docket 28 ¶ 5.13 (emphasis and capitalization in original).

FCE argues that the court should strike this reference to the *Chimes* litigation on the grounds that the reference is immaterial, impertinent, and scandalous. *See* Docket 34 at 14. FCE further argues that BH Services'

reference to the *Chimes* litigation is not appropriate because "[i]t is intended to impugn FCE's integrity and business practices by referencing other heavily contested unresolved litigation." *Id.* According to FCE, BH Services' real purpose for citing the *Chimes* litigation is "to smear FCE by implying that because FCE was sued by the government in a different case, it must be liable to [BH Services] in this case." *Id.*

Under Rule 12(f) an allegation can be considered "immaterial" if the matter "has no essential or important relationship to the claim for relief or the defenses being pleaded, or a statement of unnecessary particulars in connection with and descriptive of that which is material." 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure*, § 1382 (3d ed. 1998). Similarly, an allegation may be "impertinent" under Rule 12(f) if the "matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.*; *see also id.* (discussing "the considerable overlap between the concepts of 'impertinent' and 'immaterial' matter."). An allegation can be considered "scandalous" under Rule 12(f) when it casts an improper and derogatory light on a party to the action. *See id.* But when considering whether an allegation is "scandalous," under Rule 12(f), "[i]t is not enough that the matter offends the sensibilities of the objecting party if the challenged allegations describe acts or events that are relevant to the action." *Id.* Further, when conducting a Rule 12(f) analysis, "[a]ny doubt about whether the challenged material is redundant, immaterial, impertinent, or scandalous should be resolved in favor of the non-moving party." *Id.*

After considering the allegations in paragraph 5.13, the court concludes that paragraph should not be struck from the first amended complaint. As the Eighth Circuit has observed, despite the broad discretion that district courts have in deciding a motion to strike, "striking a party's pleadings is an extreme measure, and, as a result, we have previously held that '[m]otions to strike under Fed. R. Civ. P. 12(f) are viewed with disfavor and infrequently granted.' " *Stanbury*, 221 F.3d at 1063 (quoting *Lunsford*, 570 F.2d at 229). Although the reference to the *Chimes* litigation is potentially unflattering to FCE, the court believes that the reference could be relevant because it may provide additional background and context for BH Services' lawsuit. *See id.* (declining to grant motion to strike where the challenged information "provided important context and background to Stansbury's suit."). Further, where courts have doubt about whether a challenged matter raises a factual or legal issue, an appropriate result is for courts to deny a Rule 12(f) motion to strike and allow "the sufficiency of the allegations left for further elaboration through discovery and adjudication by summary judgment or a trial on the merits."[13] 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure*, § 1382 (3d ed. 1998). Thus, the court denies FCE's motion to strike.

## CONCLUSION

FCE's motion to dismiss the complaint became moot after BH Services exercised its right as a matter of course to amend its complaint under Federal

---

[13] FCE, as the moving party under Rule 12(f), provides no reason for why it would be unable to resolve its concerns regarding the reference to the *Chimes* litigation after discovery has concluded.

Rule of Civil Procedure 15(a)(1)(B). BH Services' sixth cause of action for common law fraud under state law and its seventh cause of action for unjust enrichment from the first amended complaint are expressly preempted by 29 U.S.C. § 1144(a) because they have a connection with, and thus relate to, an employee benefit plan. BH Services' reference to the *Chimes* litigation in paragraph 5.13 of the first amended complaint is not immaterial, impertinent, or scandalous and, therefore, does not need be struck under Federal Rule of Civil Procedure 12(f).

Thus, it is ORDERED that:

1.    FCE's motion to dismiss (Docket 20) is denied as moot.

2.    FCE's motion to dismiss and strike a portion of the first amended complaint (Docket 33) is granted in part and denied in part.

3.    Transamerica's motion to dismiss (Docket 52) is granted.

4.    ACEC's motion to dismiss (Docket 64) is granted.

5.    Counts six and seven of the first amended complaint (Docket 28 ¶¶ 11.01-12.02) are dismissed with prejudice.

DATED September 27, 2017.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE